MARSHALL FIELD, GLORE, WARD & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22440. Promulgated July 5, 1929.

*Herbert Pope, Esq.*, and *E. Barrett Prettyman, Esq.*, for the petitioner.

*P. M. Clark, Esq.*, and *C. C. Holmes, Esq.*, for the respondent.

1302

OPINION.

MORRIS: The major question with which we are concerned is whether the 20,000 shares of stock of the North American Light & Power Co. received by the petitioner in 1923 represent a commission, as contended by the respondent, or whether said shares were acquired by purchase together with bonds of the Inland Power & Light Co., as the petitioner contends. If it was in fact a purchase, obviously, the purchase, as such, can not be taxed, but if it was a commission, then it becomes taxable to the petitioner, unless it has been shown by the evidence that the stock received had no fair market value.

The record shows that the petitioner was sought to become one of the bankers in financing the consolidation of a large number of public utility properties, and that on March 10, 1923, it entered into a written agreement with the North American Co., in which it was recited that the Inland Co. would issue certain debenture bonds to the extent of $1,750,000, whereby the said North American Co. agreed to sell, and the bankers, the petitioner, Rollins & Sons, and Clement Studebaker, Jr., agreed to buy "the $1,750,000 of debentures above referred to in the amounts and to the extent set opposite the respective names, at 90 and interest, * * *." That agreement makes absolutely no mention of the sale or any other disposition of the stock in question nor any other stock or securities other than the bonds just referred to, nor is there any language therein from which we might reasonably assume that the parties intended that the 20,000 shares of stock of the North American Light & Power Co. were to be included in and considered a part of the purchase price of the bonds, and, in fact, it appears that the stock was not owned by that company. But the petitioner refers to the communication of Clement Studebaker, Jr., dated March 10, 1923, in which he said "In consideration of your execution of an agreement for purchase of debentures of Inland Power and Light Company etc.," as evidence of an intention to include the 20,000 shares of stock in the purchase price of the debenture bonds. Had this communication been written to the petitioner by the North American Light & Power Co., the vendor of the bonds under the agreement of March 10, 1923, other considerations may arise which might

require treatment or discussion here, but since, however, that communication was written by Clement Studebaker, Jr., who was himself one of the bankers and a vendee under said agreement of March 10, 1923, the same as the petitioner, we can not possibly see how he could, by a collateral writing in his own behalf, alter, or in any manner affect the agreement of March 10, 1923.

During the course of the hearing the petitioner's sole witness was asked, "Was the question of your getting stock of the North American Company discussed at the same time as the question of getting bonds, did the two go together?," and he replied, "Well, the general idea was that that was part of the trade, that we, in getting into the picture, should receive, as others had received, a certain amount of the stock and should at the same time buy a certain number of bonds, * * *."

In an attempt on the part of the respondent's counsel to ascertain why the stock was not mentioned in the agreement of March 10, 1923, the witness said, "We had an agreement I imagine with regard to the stock, certainly, a verbal agreement," meaning, we presume, that the agreement was oral as distinguished from written. He further said that the substance of that agreement was "for purchasing a certain amount of bonds, we were to receive a satisfactory security and stock, and were verbally understood to be one of the bankers for the company." Respondent's counsel asked the witness if "In consideration of the services that you were performing in lending this money to the company, you were to receive these twenty thousand shares of stock?," and the witness replied, "Yes, sir."

In the light of what we have just said with respect to the agreement of March 10, 1923, the communication regarding the stock which the petitioner received and the testimony of the petitioner's witness, we are constrained to believe that this was not an ordinary transaction where common stock was received as a bonus with the purchase of bonds, but that the bonds were acquired separately, and the stock transferred as compensation for services rendered or to be rendered or as an inducement for the lending of financial aid in the proposed consolidation. Whether that conclusion would be sound if all the facts and circumstances of the transaction were clearly placed before us, we do not know. We are satisfied, however, that it is the only reasonable and logical one to draw from the facts of record as they have been presented.

The petitioner's counsel in his brief states "that there is no presumption in this case that the stock had any value, because the Commissioner has never determined that it had a value, and he has never, so far as this record shows, even claimed any value for it." In this we believe counsel is a bit inconsistent, because it is alleged in the

**1306**

petition, among other errors, that "the respondent erred in valuing said stock at $10 a share, or in fact in finding that the stock had any market value at the time of its receipt." There can be no question but that the respondent has determined the value and, furthermore, that the record so discloses, because the respondent's deficiency notice states, "It is held that the sale of stock made near the date of purchase fully supports the value of $10.00 a share   *   *   *." It is true that the respondent refers to "Inland Power and Light Company stock" and not stock of the North American Co., but this erroneous statement of fact on the part of the respondent appears to be one of form and can not possibly affect the substantial rights of the parties, since there seems to be a clear understanding between them that only one block of 20,000 shares of common stock is in issue.   Therefore, unless the petitioner has overcome the prima facie correctness of the respondent's findings, the usual presumption of the correctness thereof must prevail.

In computing the value of the stock in question, the respondent has used $10 a share. On the subject of valuation, the record shows there were no sales of this stock between the receipt thereof and the date when it was trusteed; that it was an unlisted security during 1922 and 1923; that there was no market for the voting trust certificates representing said shares in 1923, nor were there any sales thereof while the said trust was in force. The record nowhere discloses that this stock was valueless, nor does it show what its true value was. The petitioner's witness, when asked the value of those shares in 1923, testified that "it was very difficult to arrive at   *   *   *. It was purely problematical, I would say, depending entirely as to how this consolidation worked out, what economies were effected in operation and how it was managed and everything else. In other words, its value, you see, at that time, was purely in the future." When asked if he could have determined the market value at the time the stock was received by the petitioner, the witness replied, "No, it would have been simply guess work, you see. You could have sold it perhaps if you wished to sacrifice it, you could have sold it, I don't know at what price, but through some people you could have sold it at a better price than others   *   *   *."

While it appears to our satisfaction that the principal value of the stock of the North American Light & Power Co. was prospective, and depended upon the company's ability to succeed in its undertaking, we are not convinced from the evidence adduced that it had no value in 1923 nor that it had any lesser value than that found by the respondent.

*Judgment will be entered for the respondent.*